**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MICHAEL JOSEPH SWEENEY** | § | |
| | § | |
| **V.** | § | **A-14-CV-910-DAE** |
| | § | |
| **TEXAS STATE UNIVERSITY** | § | |

<u>**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**</u>

TO:   THE HONORABLE DAVID EZRA
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Texas State University's Motion for Summary Judgment, Dkt. No. 57, and Plaintiff Michael Joseph Sweeney's Response, Dkt. No. 59.  The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. GENERAL BACKGROUND

Plaintiff Michael Joseph Sweeney ("Sweeney") has brought this action alleging that Defendant Texas State University ("Texas State") committed several violations of Title II of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973.  Dkt. No. 5 at 1. At the time of the events giving rise to this suit, Sweeney was a graduate student at Texas State. *Id*.  Sweeney alleges he is legally blind in his right eye, such that he receives academic accommodations from Texas State, including extended time to complete assignments, testing accommodations, preferential seating, early course registration, and audio recording of in-class lectures. *Id*.  The District Court previously dismissed all of Sweeney's claims save one: that Texas

State denied him the benefits of its programs when he was not admitted to the capstone course of his academic program. *Id*. at 3. Sweeney claims that he was otherwise qualified for the course, but that Professor Thomas Longoria refused to accommodate Sweeney's disability by modifying the program's requirements. *Id*. Moreover, Sweeney claims that during a meeting about the course Longoria was verbally abusive towards Sweeney, and that he placed his right hand over his right eye, which Sweeney alleges indicated that Longoria was "offended by [Sweeney's] physical impairment, and indicated to [Sweeney that] the reason for [Longoria's] verbally abusive behavior toward [Sweeney] was due to [Sweeney's] physical disability." *Id*.

Texas State now moves the Court to grant summary judgment, arguing that Sweeney was not qualified to be enrolled in the capstone course, that Texas State was not required to modify the requirements of the degree Sweeney sought, and that Sweeney cannot overcome Texas State's legitimate, non-discriminatory reason for not approving his enrollment in the capstone course.

## II. STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.

2

Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. ANALYSIS

Sweeney brings his claims under both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. The Rehabilitation Act and the ADA both prohibit discrimination against qualified individuals with disabilities; they employ many of the same legal standards and offer the same remedies. *Maples v. Univ. of Texas Med. Branch at Galveston*, 901 F. Supp. 2d 874, 878 (S.D. Tex. 2012), aff'd, 524 F. App'x 93 (5th Cir. 2013). Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Fifth Circuit reviews § 504 claims under the standard applicable to ADA claims. *See, e.g., D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) (citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc)). "To establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate: (1) that she is a qualified individual within the meaning of the ADA; (2) that she was excluded from participation in, or was denied benefits of, services, programs, or activities for which [the public entity] is responsible; and (3) that such exclusion or discrimination is because of her disability." *Greer v. Richardson Indep. Sch. Dist.*, 472 Fed. Appx. 287, 292 (5th Cir. 2012) (unpublished) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). "The only material difference between the two provisions lies in their respective causation requirements." *Bennett–Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (citation omitted). Section 504 prohibits discrimination "solely by reason" of a disability, whereas the ADA applies even if discrimination is not "the sole reason" for the challenged action. *Id.* Once the Plaintiff has established a prima facie

4

case, the burden shifts to the Defendant to produce evidence that Plaintiff is not a "qualified individual with a disability" within the meaning of Section 504 and the ADA; or that Plaintiff was not denied the benefits of or excluded from participation in the program solely because of her disability. *Tips v. Regents of Texas Tech Univ.*, 921 F. Supp. 1515, 1517 (N.D. Tex. 1996).

In addition, "[a] plaintiff asserting a private cause of action for violations of the ADA [and the Rehabilitation Act] . . . may only recover compensatory damages upon a showing of intentional discrimination." *Delano–Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir. 2002) (citing *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984)). Discriminatory intent is necessary because the ADA incorporates the Rehabilitation Act's remedies. *See* 42 U.S.C. § 12133. In turn, the Rehabilitation Act incorporates the remedies of Title IV of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794(a); 42 U.S.C. § 2000d. Under Title IV, and thus under the ADA, compensatory damages are available only where there is "intentional discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34 (1999).

Sweeney claims that Texas State discriminated against him when it refused him admission to the capstone course of his degree program. He bases his claim on two theories: first, that Longoria refused to approve his prospectus because he "was offended by the student's injury to his right eye (his disability)" (Dkt. No. 57-5 at 10); and second, because Texas State denied him "reasonable accommodations" based on his disability. Dkt. No. 1 at 2. By its motion, Texas State makes three arguments: first, that Sweeney was not qualified to enroll in the capstone course; second, that it was not required to modify the requirements of Sweeney's degree program when Sweeney has not demonstrated that such a modification was related to his disability; and third, that Sweeney cannot

overcome Texas State's legitimate, non-discriminatory reason for not approving his enrollment in the capstone course.

## A.    Whether Sweeney was qualified to enroll in the capstone course

Texas State's first and third arguments are variations on a theme: Sweeney was not qualified to enroll in the capstone course because he failed to submit a sufficient prospectus demonstrating his understanding of an applied research plan.   Academic institutions are not required to "fundamentally alter the nature of [a] service, program, or activity" or "alter eligibility criteria that are 'shown to be necessary for the provision of the service, program, or activity being offered.'" *Maples, supra.,* 901 F. Supp. 2d at 883.   Rather, "[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 n. 11 (1985) (quoting *Board of Curators, Univ. of Missouri v. Horowitz*, 435 U.S. 78, 96 n.6 (1978)). Accordingly, "when reviewing the substance of academic decisions, courts "should show great respect for the faculty's professional judgment." *Id*. at 225.

In support of its argument, Texas State attaches the declaration of Professor Thomas Longoria, whom Sweeney had asked to be his supervising professor in the capstone course.   Dkt. No. 57-1 at ¶ 4.   On October 25, 2012, Sweeney and Longoria met to discuss Sweeney's prospectus, which Longoria had to approve in order for Sweeney to enroll in the capstone course.   *Id*.   at ¶¶ 3, 6.   Longoria told Sweeney that "his prospectus, specifically his methodology section, was inadequate for me to approve his registration in this course," and that the "literature review and methods chapter must be aligned using the same heading and subheadings and that the literature review must support and justify the empirical aspect of the project." *Id*.   at ¶ 6.   Longoria states that Sweeney "seemed

angry and argumentative" and "did not take the criticism well," to the point that he "pounded on [Longoria's] desk and demanded that [Longoria] allow him to enroll" in the capstone course. *Id*. Longoria states that he worked with Sweeney to identify particular problems in the prospectus, encouraging him to take notes on ways to improve his submission. *Id.* at ¶ 7. Longoria states that Sweeney sent him a revised prospectus on December 17, 2012, but that this prospectus was also inadequate, as its "methodology chapter was too short and needed more detail," and Longoria could not understand Sweeney's "measurement scales." *Id*. ¶ 9. Longoria states that Sweeney did not contact him again. *Id*. He ultimately did not approve Sweeney to enroll in the capstone course. *Id*. at ¶ 10.

Sweeney points to a single piece of evidence to demonstrate his entitlement to a trial on this claim. He contends that at their meeting, Longoria covered his eye with his hand, which Sweeney argues is evidence of discriminatory animus, and therefore creates a genuine issue of material fact as to why his prospectus was denied and he was not allowed to enroll in the capstone course. While a judge may not weigh the evidence before him at summary judgment, he must nonetheless "determine whether there is a genuine issue *for trial.*" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986) (emphasis added). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted). The standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id*. at 250. Indeed, the Court long ago stated that:

Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872).  The inquiry thus is not whether there is any evidence at all, but "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson, supra.,* 477 U.S. at 251-52.

As noted, the only evidence Sweeney has offered to prove Longoria's denial of his prospectus was born of discrimination, and not because the prospectus was substantively lacking, comes from the Formal Complaint Form he submitted to Texas State's Office of Equity and Access.  On the Form, Sweeney relates at length the series of difficult meetings he had with Longoria and other Texas State officials, during which he claims he "endured 40 minutes of abusive, oppressive, and insulting remarks from the instructors" about his prospectus and intelligence.  Dkt.  No.  57-5 at 10. But while Sweeney states that he "believes" these remarks were "a result of direct discrimination," (*id*.) Sweeney does not actually accuse Longoria or anyone else of making derogatory remarks about his visual impairment, or taking any other action that would indicate to a reasonable person that he was prejudiced towards Sweeney, save one:

The instructor did place his right hand over his right eye, at one point, about midway through the office meeting while he was talking to the student.  This made the student feel as if the instructor was trying to tell the student that the instructor was offended by the student's injury to his right eye (his disability).

Dkt. No. 57-9 at 10. Assuming that Prof. Longoria placed his hand over his eye during one of the two meetings at issue, when taken together with the detailed evidence presented by Texas State, this is the sort of "merely colorable," "not significantly probative" evidence that is insufficient to create a genuine issue for trial. Put another way, if this is the sole evidence of Texas State's alleged discriminatory animus presented at trial, no jury could properly proceed to return a verdict for Sweeney based on this evidence. And as Sweeney has not produced any other evidence in support of his claim, he has failed to meet his burden and summary judgment is proper.

Sweeney also notes, generally, that he "has endured disrespect, abuse and discrimination, from several instructors in the MPA program, in the past two years." *Id*. at 9. He argues that the faculty are poor teachers who are mean to students and that "these behaviors, coming from scholars, are not mentally or emotionally healthy for the student body, and are even more devastating for students who have to suffer with disabilities and who are discriminated against for their disabilities by members of the academic community over many months, and many years." *Id*. These, again, are just assertions, and are not evidence. They, too, are insufficient to create a genuine issue for trial.

## B.    Whether Texas State was required to modify the requirements of its degree program

Sweeney's complaint also alleges that Texas State failed to accommodate his visual impairment, and that this constitutes discrimination. Under both the ADA and the Rehabilitation Act, "discrimination by a public entity includes failing to make reasonable modifications or accommodations [for] the disabled individual, so that [he] can participate in the programs or activities provided by the public entity." *Aragona v. Berry*, 3:10–CV–1610–G, 2012 WL 467069, *10–11 (N.D.Tex. Feb. 14, 2012) (internal citations omitted); *see also* 28 C.F.R. § 35.130(b)(7); 34 C.F.R. § 104.44(a). The plaintiff, however, bears the burden of requesting reasonable

accommodations. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir.2007).  The public entity must then engage in an "interactive process" to determine the best means of accommodating the plaintiff's disability.  *Shurb v. Univ. of Texas Health Sci. Ctr. at Houston-Sch. of Med.*, 63 F. Supp. 3d 700, 709 (S.D. Tex. 2014).

While Sweeney was receiving accommodations related to his impairment, such as preferential seating in the classroom, extended time on examinations, and early course registration (Dkt. No. 57-4 at 4), he has presented no evidence that he actually asked either Professor Longoria or Texas State to modify the prerequisites for the capstone course to accommodate his visual impairment.  Nor has he shown that, even if he had requested an accommodation on account of his visual impairment, that such a disability merited any change in the capstone course prerequisites. The prerequisites for the course require a detailed proposal for the student's Applied Research Project; they do not require anything that a visually-impaired student would be less able to produce than a fully-sighted student, and Sweeney fails to identify any accommodation related to the enrollment process in the ARP course that would be merited by his disability.  Texas State convincingly argues that to allow Sweeney to enroll in the capstone course without having a faculty member's approval would have constituted a fundamental modification in the prerequisites to enrolling in the course.  But the point is probably moot, as Sweeney has failed to present any evidence, or even plead facts sufficient to make out a claim, that Texas State denied him a reasonable accommodation.

Because Sweeney has failed to produce evidence sufficient to create an issue for trial on either of his theories of discrimination, summary judgment is appropriate and Sweeney's action should be dismissed.

## IV. RECOMMENDATION

Based upon the foregoing, the Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendant Texas State University's Motion for Summary Judgment, Dkt. No. 57, and **DISMISS WITH PREJUDICE** this action.   The Court further recommends that all other pending matters in this action be **DISMISSED AS MOOT.**

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 11 day of July, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

11